Joanne **KAMERLING**, Plaintiff–Appellant,

v.

Larry G. **MASSANARI**, Acting Commissioner of the Social Security Administration,* Defendant–Appellee.

Docket No. 00–6268.

United States Court of Appeals, Second Circuit.

Argued: June 21, 2002.

Decided: July 03, 2002.

---

* During the pendency of this appeal, Larry G. Massanari became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Larry G. Massanari is substituted for former Commissioner Kenneth S. Apfel as the defendant in this suit.

Joanne Kamerling, East Haven, CT, pro se.

Ann M. Nevins, Assistant United States Attorney, Bridgeport, CT, for John A. Danaher III, United States Attorney for the District of Connecticut (Nancy B. Salafia, Assistant Regional Counsel, Social Security Administration, Boston, MA, of counsel), for Defendant–Appellee.

Before McLAUGHLIN, CALABRESI, and B.D. PARKER, Jr., Circuit Judges.

PER CURIAM.

Plaintiff–Appellant Joanne Kamerling ("Kamerling"), an attorney proceeding *pro se*,[1] appeals from a ruling, dated May 18, 2000, of the United States District Court for the District of Connecticut (Dorsey, *J.*) remanding Kamerling's application for social security disability benefits to the administrative law judge (the "ALJ") for further findings regarding Kamerling's potential mental health disability. The district court also denied Kamerling's request for a preliminary injunction that would force the Social Security Administration (the "SSA") to provide a waiver form to all recipients of disability or elderly benefits. Plaintiff sought the waiver form to enable benefit recipients to disclaim all or part of their monthly awards in favor of the SSA rather than the United States Department of Treasury (the "Treasury") and, in so doing, simultaneously to express opposition to the United States government and replenish the depleting SSA fund.

This appeal followed.

## BACKGROUND

Plaintiff–Appellant filed an application for disability benefits with the SSA on March 12, 1993, claiming that she had become disabled as a result of a back injury that she suffered when she fell down several flights of stairs on February 28, 1992. Plaintiff alleged a number of symptoms, including degeneration of spinal discs, problems with her joints, tremors, difficulty concentrating and sleeping, and depression. The SSA denied plaintiff's application initially and upon reconsideration. In denying Kamerling's request for benefits, the SSA stated that, although plaintiff's physical and emotional problems prevented her from returning to her previous job as an attorney, the medical evidence indicated that plaintiff had the ability to perform work at the sedentary level.[2]

---

1. Joanne Kamerling reports that she is admitted to the bar of the State of New York. Kamerling was initially represented by counsel, but her counsel withdrew her representation on December 3, 1996, stating that Kamerling had refused to consider sound, legal advice.

2. "Sedentary work" is defined as work involving occasional standing and walking, lifting no more than ten pounds at a time, and occasional lifting and carrying of light objects. *See Schaal v. Apfel*, 134 F.3d 496, 501 n. 6 (2d Cir.1998) (citing 20 C.F.R. § 404.1567(a)).

Plaintiff appealed, but, after making a request for a hearing before an administrative law judge, Kamerling waived her right to appear and, after being fully advised of her right to counsel, proceeded *pro se.* No hearing was held and, on January 31, 1995, the ALJ issued a decision finding Kamerling not to be disabled. Applying the familiar five-step sequential evaluation for determining whether a person is disabled,[3] *see* 20 C.F.R. § 416.920, the ALJ concluded that Kamerling was not disabled because, although plaintiff's physical and emotional symptoms, when considered together, constituted severe impairments that precluded plaintiff from performing her past work as an attorney and a teacher, plaintiff nevertheless retained the residual functional capacity to perform sedentary work.[4] The ALJ found that the objective medical evidence did not support plaintiff's subjective complaints of disabling pain or her allegations of severe functional incapacity.

In reaching this conclusion, the ALJ discounted the residual functional capacity assessments and opinions of "permanent" and "total" disability provided by plaintiff's treating physicians. Because the ALJ found that the treating physicians's opinions were not adequately supported by medically acceptable evidence and were inconsistent with other substantial evidence in the record (including the findings of both independent and state agency physicians), the ALJ determined that the treating physicians' opinions were not entitled to controlling weight under 20 C.F.R. § 404.1527.[5]

After considering plaintiff's allegations of physical disability, the ALJ proceeded to evaluate the medical evidence concerning her mental health. Included in the medical record were reports from plaintiff's psychiatrist, which indicate that Kamerling is depressed, suffers from significant pain, cannot concentrate effectively, and is unable to function effectively in her work as an attorney. The reports state, moreover, that plaintiff was being treated with anti-depressants and supportive psychotherapy. A mental residual functional capacity assessment performed by a state psychologist also indicates that

---

3. In the course of the evaluation, the SSA first considers whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, the SSA considers whether the claimant has a "severe impairment" that limits the claimant's mental or physical ability to do basic work activities. *Id.* § 416.920(c). If the claimant has a "severe impairment," the SSA then determines whether the impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(d). If the claimant has a listed impairment (or one that is "equal to" a listed impairment), the SSA will presume the claimant to be disabled. If the claimant does not have a listed impairment, the SSA must determine whether the claimant has the "residual functional capacity" to perform his or her past relevant work despite a severe impairment. *Id.* § 416.920(e). Finally, if the claimant cannot perform past relevant work, the Commissioner determines whether the claim-

ant can do other work, in light of the claimant's residual functional capacity, as well as his or her age, education and past work experience. *See Schaal,* 134 F.3d at 501.

4. Although the ALJ determined that plaintiff had the residual functional capacity to perform at least sedentary work, he stated that she should avoid jobs requiring excessive bending and stooping, and exposure to more than a moderate degree of interaction with others and more than a moderate degree of stress.

5. The Social Security Regulations provide that a treating physician's report is generally given more weight than other reports and that a treating physician's opinion will be controlling if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).

plaintiff suffers from an affective disorder that often limits plaintiff's social functioning and concentration, but that there is no evidence of organic mental, psychotic, personality, or anxiety-related disorders. Kamerling has, throughout the disability determination process, strenuously denied that she has a mental impairment.

In his decision, the ALJ observed that the physicians' and psychologist's treatment notes, as well as plaintiff's numerous letters to the Office of Hearings and Appeals, indicate that Kamerling suffers from a personality disorder with depression and maladaptive behavior that may preclude her from returning to her past relevant work. The ALJ determined, however, that the written record [6] did not show that Kamerling has a severe mental impairment that prevents her from engaging in substantial gainful activity.

Since Kamerling's claim survived the first four steps of the disability determination inquiry, the burden shifted to the Commissioner to show that there is other gainful work in the national economy that Kamerling could perform. *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir.2000); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir. 1996). The ALJ concluded that, considering plaintiff's age, education, work experience, and residual functional capacity, "jobs exist in significant numbers in the national economy which [plaintiff] can perform." The ALJ continued:

> Administrative notice is taken that large numbers of jobs exist in the national economy such as title searcher, legal researcher, legal librarian, and similar jobs which involve minimal stress and limited contact with others, where a

worker can sit or stand at his or her option, and where the [plaintiff's] legal experience could be utilized.

On administrative appeal, the SSA Appeals Council stated that the ALJ "properly rejected the opinion of treating physicians" and that "[s]ubstantial evidence exists in the record to support the residual functional capacity finding" of the ALJ. The Appeals Council nevertheless remanded the case to the ALJ, stating:

> [T]he Administrative Law Judge cannot take "administrative notice" of either the existence, skill level, or transferability of skills from such jobs as title searcher and legal researcher.... The Medical Vocational Guidelines ... take administrative notice only of the existence of a certain number of unskilled occupations at the sedentary, light, and medium exertional levels.... Vocational expert evidence is required to identify transferable skills, occupations for which skills may be transferred, and the numbers of jobs the claimant may still be capable of performing.

On remand, the ALJ conducted a hearing on January 9, 1997. Kamerling again did not retain counsel and, citing several objections to the disability determination process, declined to participate.[7] At the hearing, the ALJ elicited testimony from a vocational expert, who stated that a person of plaintiff's age, education, and past work experience, and who could do sedentary work could perform plaintiff's past relevant work as an attorney. The vocational expert testified, however, that he needed "clarification" on plaintiff's personality disorder, and that, "without more definitive

---

**6.** Because Kamerling waived her right to appear at a hearing before the ALJ, the ALJ was unable to assess her demeanor as part of his evaluation of her mental condition and her subjective complaints of pain.

**7.** In her brief, plaintiff states that she declined to participate, in protest against the disability determination process and also because she claims that her participation would be futile.

information about [plaintiff's] psychiatric situation," he could not determine its vocational impact. He concluded, nevertheless, that "there are jobs," such as legal researcher and title searcher,[8] which "could be suitable [for plaintiff], assuming [that] there [are] no conflicting psychiatric problems." These jobs, the vocational expert testified, exist in significant numbers both in plaintiff's local market and in the national economy.

On February 7, 1997, the ALJ issued a decision in which he reiterated his conclusions that the opinions of plaintiff's treating physicians were not entitled to controlling weight and that plaintiff's subjective complaints of pain were not credible. The ALJ stated, further, that, although the vocational expert had testified that plaintiff could perform her past relevant work as an attorney, the ALJ had concluded that, in light of plaintiff's functional limitations, plaintiff may not be able to perform such work. The ALJ noted, however, that, given plaintiff's residual functional capacity and the vocational testimony, plaintiff could be expected to perform the sedentary work of a legal researcher or similar law-related jobs, which exist in significant numbers in the national economy.

Plaintiff requested a review by the Appeals Council, which request was denied. Plaintiff then filed a complaint in the United States District Court for the District of Connecticut, seeking reversal of the ALJ's decision and asserting a panoply of constitutional challenges to the disability determination process. Plaintiff claimed, *inter alia,* that reliance on the report of a nontreating physician, who had not examined her and apparently had not reviewed all of her medical reports, violated her rights to due process and equal protection, as well

as her rights under the Confrontation Clause. Plaintiff claimed, moreover, that the SSA committed fraud and destroyed, mutilated, altered, and omitted some medical reports from her administrative file. Furthermore, plaintiff asserted that failure to provide a waiver form so that recipients could waive benefits in favor of the SSA fund violates the First, Fifth, and Thirteenth Amendments of the U.S. Constitution. In addition to disability benefits, plaintiff sought declaratory and injunctive relief.

On April 30, 1999, defendant moved for a voluntary remand so that the Appeals Council could instruct the ALJ to obtain further information concerning the severity of plaintiff's mental impairment. The district court denied defendant's motion without prejudice on the ground that defendant did not demonstrate good cause for the remand. The district court noted that defendant did not offer any facts or arguments to substantiate its request, and that remand might delay review of plaintiff's application, which, at that time, had been pending for over six years. Defendant thereafter moved for summary judgment, in accordance with the district court's order.

After reviewing the record, the district court determined that plaintiff's treating physicians "do not support their conclusions with medical findings which meet the [relevant] criteria," and that, in any event, the physicians's opinions that plaintiff is disabled and incapable of work "represents a legal conclusion beyond the capacity of these sources." The district court also stated that "[p]laintiff does not present evidence to contradict directly the [residual functional capacity] finding," and that,

---

8. The vocational expert testified that, although plaintiff had worked as a teacher for fifteen years, plaintiff could not be hired as a teacher because she did not have a license and would need to be recertified.

"[i]n the absence of contradictory evidence, the factors noted by the ALJ provide sufficient evidence to substantiate his finding." The district court noted, moreover, that the ALJ's determination that there were jobs in the national and local economies that plaintiff could perform was uncontested. Finally, the district court found that, although plaintiff vigorously denies any mental impairment, "[t]he record contains suggestions of a potential mental health condition which has not been subject to exposition." The district court wrote:

> [T]he ALJ noted restrictions on her social functioning and concluded that she cannot work in jobs which require more than a moderate degree of stress or interaction. The treating sources also indicate depression.... The record and the docket reflect what may constitute aberrational behavior. Anecdotal experience in the record or known to the court cannot substantiate a diagnosis. Only a mental health professional can do so. Plaintiff's mental health has not been squarely addressed. Indications from the treating sources combined with the anecdotal experience give good cause to develop the record further on this point and for a determination of any disability related to plaintiff's mental health.

(citations and footnotes omitted). The district court made clear, however, that it was not suggesting that plaintiff suffers from mental illness, but rather that her mental condition was "an undeveloped area of appropriate inquiry." Accordingly, the case was remanded to the ALJ "for further findings as to any potential mental health disability." Significantly, the district court observed that, since "the record is to be reopened, plaintiff may supplement the record with further evidence."

The district court also denied plaintiff's request for injunctive relief. It held that plaintiff had not made an adequate showing either of irreparable harm or of a likelihood of success on the merits. The district court noted, first, that plaintiff's requested relief concerns the option to return benefits (*i.e.,* a claim of economic injury), and that "economic injury does not warrant the entry of a preliminary injunction." The court also observed that plaintiff could exercise political speech in numerous other ways, including by donating an unwanted award back to the Treasury. Second, the district court stated that, because plaintiff's entitlement to benefits depends on the ALJ's further findings on remand, the requirement that plaintiff must make an adequate showing of a likelihood of success on the merits in order to obtain injunctive relief was not met.

Plaintiff thereafter moved for reconsideration of the district court's May 18, 2000 ruling, citing three objections: (1) the ALJ's reliance on a non-treating source, (2) the failure by the ALJ properly to construe medical records, and (3) the lack of a basis for the remand for further findings on her mental health. The district court granted the motion and, in a ruling dated July 12, 2000, rejected plaintiff's objections and affirmed the remand to the ALJ, stating that further inquiry into plaintiff's mental health "may ultimately prove beneficial to plaintiff." This appeal followed.

## DISCUSSION

### I.

■■■ "Although neither party has raised the issue, we are obliged at the outset to assess whether we have jurisdiction to hear this appeal." *Goldberg v. Cablevision Sys. Corp.,* 261 F.3d 318, 323 (2d Cir.2001). We always have the power to undertake this inquiry and, where jurisdiction is questionable, we are obliged to examine it sua sponte. *See, e.g., Louisville*

& *Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169, 1175 (2d Cir.1995). Our appellate jurisdiction is limited generally to appeals from final judgments of the district courts pursuant to 28 U.S.C. § 1291 or Rule 54(b) of the Federal Rules of Civil Procedure, and from certain interlocutory orders pursuant to 28 U.S.C. § 1292.

■■■ Kamerling purports to invoke our jurisdiction to review a final judgment of the district court. A judgment is not considered final unless it disposes of all claims against all parties and "ends the litigation on the merits[,] ... leav[ing] nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). An order that adjudicates fewer than all of the claims remaining in the action is not a final order appealable pursuant to 28 U.S.C. § 1291, unless the court directs the entry of a final judgment as to the dismissed claims "upon an express determination that there is no just reason for delay." Fed.R.Civ.P. 54(b). In the case before us, the district court agreed with the ALJ's determination that the opinions of plaintiff's treating physicians were not entitled to controlling weight. The district court stated that, in the absence of contradictory evidence, "the factors noted by the ALJ provide sufficient evidence to substantiate his finding." The district court, however, did not grant defendant's motion to affirm the decision of the commissioner and, in its most recent ruling, the court affirmed its remand to the ALJ for further findings relating to plaintiff's mental health. Although the district court remanded explicitly for mental health findings, the court's orders make clear that, on remand, plaintiff may take the opportunity to supplement the record with further evidence. And, while unstated, it is plain that such evidence may relate either to plaintiff's mental health or to her allegations of physical disability.

■■■ Because the district court's order adjudicated fewer than all of the claims remaining in the action, it is not a final order that would be appealable pursuant to 28 U.S.C. § 1291. And, it is undisputed that the district court neither directed entry of judgment pursuant to Fed.R.Civ.P. 54(b), nor certified the order for immediate appeal pursuant to 28 U.S.C. § 1292(b). In addition, the collateral order doctrine does not apply because the district court's order is neither collateral to the merits nor unreviewable on appeal from a final judgment. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (stating that, to be appealable as a collateral order, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment). Therefore, this appeal is limited to a review of the district court's denial of preliminary injunctive relief, which we have jurisdiction to consider. See 28 U.S.C. § 1292(a)(1) (conferring jurisdiction on Courts of Appeals over "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions").

## II.

Before reviewing the district court's denial of injunctive relief, we pause to address a crucial issue not yet considered in this case. The district court ordered a remand to the ALJ. On that remand, plaintiff would have the opportunity to submit (and, hence, the ALJ would have the opportunity to review) additional evidence pertaining to her physical disability. If, on remand, the ALJ sustained its prior find-

ing of no disability (because the existing and any additional evidence relating to plaintiff's physical condition did not meet the requirements for disability), the court then asked the ALJ to consider plaintiff's mental condition and its effect on her possible disability. But, such consideration assumes that, once an application for disability benefits is filed, it is appropriate to examine all potential bases for finding disability, even those that the claimant abjures and, indeed, strenuously denies. This is an important question that the district court may wish to consider before sending the case back to the ALJ. We emphasize that we ourselves express no view on this issue, which has not been briefed to us and which we have, in any event, no power currently to decide.

### III.

■ We review for abuse of discretion the district court's denial of the plaintiff's motion for injunctive relief. *See, e.g., Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 167, 171 (2d Cir.2001). A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor. *See, e.g., Otokoyama Co. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir.1999).

■ The showing of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction," *Bell & Howell: Mamiya Co. v. Masel Supply Co.,* 719 F.2d 42, 45 (2d Cir.1983), and the moving party must show that injury is likely before the other requirements for an injunction will be considered. *See Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir.1999) (per curiam). To establish irreparable harm, a party seeking preliminary injunctive relief must

show that "there is a continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot provide adequate compensation." *N.Y. Pathological & X–Ray Labs., Inc. v. INS,* 523 F.2d 79, 81 (2d Cir.1975). And, irreparable harm must be shown to be actual and imminent, not remote or speculative. *See, e.g., Rodriguez,* 175 F.3d at 234; *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989).

In the instant case, plaintiff seeks an injunction that would force the SSA to provide waiver forms that would enable benefit recipients to disclaim all or part of their awards in favor of the SSA fund. The district court reasoned that, because plaintiff's requested relief concerns the option to return benefits, and because this is an economic injury, preliminary injunctive relief is not available. The district court, moreover, pointed out that "it is not clear that plaintiff shows an actual injury, because she or any other benefit[ ] recipient[s] may terminate benefits entirely, donate an unwanted award back to the Treasury, and exercise political speech in numerous other ways."

■ As the district court rightly recognized, plaintiff's request for injunctive relief has both economic and speech elements. The Supreme Court has acknowledged that contributions, in both charitable and political contexts, function as a general expression of support for the recipient and its views and, as such, are speech entitled to protection under the First Amendment. *See Buckley v. Valeo,* 424 U.S. 1, 21, 23, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *cf. Vill. of Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (holding that the solicitation of financial support falls within the protection of the First Amendment). It is well established

that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). But, as the district court also noted, any purely communicative aspect of plaintiff's potential waiver of benefits to express opposition to the U.S. government or to help replenish the SSA fund is not lost or otherwise impaired. This is so because plaintiff retains the ability to terminate any benefits that she may receive and to donate an unwanted award to the Treasury. The fact that she cannot donate the funds directly to the SSA does not amount to irreparable harm.

■ In any event, even assuming arguendo that plaintiff can demonstrate irreparable harm, her request for an injunction would fail. Plaintiff's ability to donate or to disclaim any benefits ultimately depends on her entitlement to benefits in the first place. Because, at this juncture, plaintiff is not entitled to such benefits, preliminary injunctive relief is premature.

Under these circumstances, there was no abuse of discretion. Accordingly, we AFFIRM the district court's denial of preliminary injunctive relief. And, since we lack jurisdiction to review plaintiff's remaining contentions, we DISMISS the rest of the appeal.