**Walter POGLIANI, Jacqueline Dunn, Stephen Dunn, Robert H. Boyle Dimitri Sevastopoulo, Ian Nitschke, and Stand Together Oppose Power Plant, Plaintiffs–Appellants,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, Defendant– Appellee.**

**Docket Nos. 01–6102, 01–6199.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 4, 2002.

Decided: Oct. 09, 2002.

Kenneth F. McCallion, New York, NY, for Plaintiffs–Appellants.

Elizabeth S. Riker, Assistant United States Attorney (for Joseph A. Pavone, United States Attorney), United States Attorney's Office for the Northern District of New York, Syracuse, NY, for Defendant–Appellee.

Before CALABRESI and B.D. PARKER, Jr., Circuit Judges, and STEIN, District Judge.*

PER CURIAM.

Plaintiffs, concerned citizens and property owners in Athens, New York, appeal from the denial of their motion to preliminarily enjoin the issuance of an Army Corps of Engineers ("Corps") permit allowing the use of federal waters and wetlands for construction of an electric generating plant in Athens, near the banks of the Hudson River. The majority of the issues raised on this appeal have been resolved in a summary order filed today separately from this opinion. We write to address whether the Corps was statutorily required to give plaintiffs thirty days advance notice of certain of its decisions.

■  The facts and procedural history of this case, with which we assume familiarity, are set forth in the thorough opinion of the District Court. *See Pogliani v. United States Army Corps of Eng'rs*, 166 F.Supp.2d 673 (N.D.N.Y.2001). Relevant here are the procedures the Corps was required to follow in its review of the generating project under the National Environmental Policy Act of 1969, ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, which Congress enacted to ensure that federal agencies examine and disclose the potential environmental impacts of projects before allowing them to proceed. *See Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 100, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983); *Kleppe v. Sierra Club*, 427 U.S. 390, 417, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); 40 C.F.R. § 1500.1(b) (2001) ("NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken."). The Act provides that "all agencies of the Federal Government" shall, upon proposing a "major federal action" that will "significantly affect the quality of the human environment," prepare a detailed statement describing the environmental impact of the proposed action, a so-called environmental impact statement or EIS. 42 U.S.C. § 4332(2)(C) (2000); *see also* 40 C.F.R. § 1502 (2001). If, at the outset, an agency is unsure about the potential environmental impact of a project or believes that there will be no significant impact, it prepares an environmental assessment or EA, which examines the environmental aspects of the project in less detailed terms than an EIS.[1] *See* 40 C.F.R. § 1501.4(b) (2001); 33 C.F.R Pt. 325, App. B ¶ 7 (2001). NEPA does not require an EIS to be issued; an agency need only prepare an EIS when it finds (either at the outset or through an EA) that a project will have a significant environmental impact. *See* 42 U.S.C. § 4332(2)(C); 40 C.F.R. §§ 1501.4(c), 1508.9(a)(1), 1508.13 (2001). The agency must involve the public in the NEPA review process and consider the views of other interested federal, state,

---

* The Honorable Sidney H. Stein, United States District Court for the Southern District of New York, sitting by designation.

1. The EA is a "concise public document ... that serves to":

(1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact[;]

(2) Aid an agency's compliance with the Act when no environmental impact statement is necessary[; and]

(3) Facilitate preparation of a statement when one is necessary.
40 C.F.R. § 1508.9(a) (2001). It "[s]hall include brief discussions of the need for the proposal, of alternatives ..., of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted." 40 C.F.R. § 1508.9(b); *see also* 40 C.F.R. § 1501.3(b) (2001) ("Agencies may prepare an environmental assessment on any action at any time in order to assist agency planning and decisionmaking.").

and local entities in making its decision. *See* 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1506.6 (2001).

In this case, the project owner, Athens Generating Company ("AGC"), applied for a Corps permit in February 1999. After more than two years of review during which the Corps consulted with several other federal and state agencies and held multiple public hearings, it issued a permit to AGC along with an EA in which it concluded that the proposed construction would not have a significant impact on the environment (a so-called Finding of No Significant Impact ("FONSI")). In their complaint, plaintiffs seek to enjoin the permit on the ground that an EIS should have been prepared. The District Court denied their motion for a preliminary injunction, and plaintiffs appealed.

■■■ We review the denial of a preliminary injunction motion for abuse of discretion. *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 171 (2d Cir.2001). "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Id.* at 169. We find no abuse of discretion here.

Plaintiffs contend that the Corps erred by failing to release its draft EA and FONSI for public comment prior to their issuance. As they point out, and the District Court correctly found, Council on Environmental Quality ("CEQ") regulations [2] require agencies to "involve the public" in the NEPA review process by noticing and holding public hearings, soliciting information from the public, and making the final

EA and FONSI publicly available pursuant to the Freedom of Information Act, 5 U.S.C. § 552. *See* 40 C.F.R. § 1506.6; *see also* 40 C.F.R. §§ 1501.4(b), (e)(1) (2001). Corps regulations require the public comment period to be completed prior to the EA's issuance. *See* 33 C.F.R Pt. 325, App. B ¶ 7(a). The District Court failed, however, fully to analyze the requirement that in "certain *limited circumstances*, which the agency may cover in its procedures ... the agency shall make [a FONSI] available for public review ... for 30 days before [it] makes its final determination whether to prepare an [EIS]...." 40 C.F.R. § 1501.4(e)(2) (emphasis added). These circumstances are when "(i) [t]he proposed action is, or is closely similar to, one which normally requires the preparation of an environmental impact statement ..., or (ii)[t]he nature of the proposed action is one without precedent." *Id.*

The Corps' NEPA implementing procedures, which supplement the CEQ regulations, *see* 33 C.F.R. § 230.1; 40 C.F.R. §§ 1500.6, 1507.3(a), apply the thirty-day public comment requirement to draft FONSIs and EAs "in the case of feasibility, continuing authority, or special planning reports and certain planning/engineering reports." 33 C.F.R. § 230.11 (2001). These procedures go on to state that "[f]or all other Corps project actions, a notice of *availability* of the FONSI will be sent to concerned agencies, organizations, and the interested public." *Id.* (emphasis added); *see* 40 C.F.R. § 1506.6.

■■■ "A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor."

**2.** These regulations were enacted "to tell federal agencies what they must do to comply with the procedures and achieve the goals of [NEPA]." 40 C.F.R. § 1500.1(a).

*Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002). Plaintiffs contend that the Corps' NEPA review in this case is among the "limited circumstances" to which the thirty-day public comment requirement applies. We believe they are unlikely to succeed on this point. Nor are there sufficiently serious questions on the merits of the issue to make it a fair ground for litigation. Plaintiffs first argue that § 230.11 applies because the Corps permit provides for "continuing authority" over the generating project, as it contemplates Corps monitoring of mitigation efforts and periodic reports on environmental conditions. However, this section refers not to "continuing authority projects" or "continuing authority permits" but to "continuing authority ... *reports.*" § 230.11 (emphasis added); *see also* 33 C.F.R. § 230.13 (discussing "continuing authority reports" in the EIS context). These reports, agency regulations reveal, are distinct from Corps decisions on permit applications like the one in this case. "Continuing authority reports" are those produced under the Corps' own "Continuing Authorities Program," an administrative streamlining mechanism which enables the agency "to plan, design, and construct certain types of water resource improvements without specific Congressional authorization."[3] 33 C.F.R. § 263.10. The planning process for such improvements, as contemplated by the regulations, centers on three *reports:* an initial "Reconaissance (Recon) Report"; a subsequent "feasibility study"; and a final "Detailed Project Report." *See* 33

C.F.R. §§ 263.15, 263.19. These reports, which may include an EIS or EA, surely are the "continuing authority reports" referenced in § 230.11.[4] *See* 33 C.F.R. Pt. 230, App. A ¶ 2(a) (2001) (requiring circulation of a draft EA and FONSI to the interested public under the Continuing Authorities Program).

Further, the NEPA procedures applicable to Continuing Authority Program studies, which require the circulation of a draft EIS or EA, explicitly state that they apply to "Civil Works activities *other than permits.*" 33 C.F.R. Pt. 230, App. A (emphasis added). The rationale for releasing draft reports before their issuance for continuing authority studies, as opposed to other Corps projects, is reflected in the regulations, which state:

> Since plans formulated under [the Continuing Authority Program] are usually smaller in scope than those specifically authorized by Congress, *planners should be able to more readily identify the affected and interested public early in the planning process and initiate a public involvement program* that can be continued through plan implementation.

33 C.F.R. § 263.15(e) (emphasis added). Tellingly, the regulations require "terminat[ion]" of a feasibility study "if there is a lack of public support." 33 C.F.R. § 263.15(c)(2)(iii). We therefore conclude that the thirty-day public comment requirement under § 230.11 is inapplicable to the Corps permit issued to AGC in this case.

---

**3.** Corps regulations list seven "continuing authorities" that enable the agency to initiate federal involvement in a project. They include: (i) the Small Flood Control Project Authority; (ii) authority for snagging and clearing for flood control; (iii) authority for emergency streambank and shoreline protection of Public Works and nonprofit public services; (iv) small navigation project authority; (v) authority for snagging and clearing for navigation; (vi) small beach erosion con-

trol project authority; and (vii) authority for mitigation of shore damages attributable to navigation projects. 33 C.F.R. § 263.13 (2001) (citations omitted).

**4.** It is also noteworthy that Corps regulations define "monitoring" as an "oversight activity" focused on mitigation measures and other aspects of the Corps' decision, not a "continuing authority." 33 C.F.R. § 230.15.

Referencing the CEQ regulations, plaintiffs also contend that the Athens generating project "is or is closely similar to" those actions which normally require an EIS, or is "without precedent," thus triggering the thirty-day requirement under 40 C.F.R. § 1501.4(e)(2). But they provide no explanation as to why this is so, and even fail to specify which of these mutually incompatible conditions they believe to describe the Athens project.[5] Without any supporting evidence, we see no reason to assume that either condition has been demonstrated.[6]

Accordingly, the District Court was correct in declining to issue a preliminary injunction based on the Corps' failure to disclose its draft EA and FONSI to plaintiffs. The judgment is affirmed.

---

5. The entirety of plaintiffs' argument on this point is as follows:

> In circumstances such as those presented here, where the proposed action is, or is closely similar to, one which normally requires preparation of an EIS or where the nature of the proposed action is without precedent, "the agency shall make the finding of no significant impact available for public review ... for 30 days before the agency makes it final determination whether to prepare an environmental impact statement."

Br. for Pl.-Appellants at 51-52 (quoting 40 C.F.R. § 1501.4(e)(2)).

6. Because the thirty-day public comment requirement does not apply here, we decline to address whether the failure to grant an opportunity to comment could, under different circumstances, constitute an irreparable harm.