See also 2002 WL 31255596.

Walter POGLIANI, Jacqueline Dunn, Stephen Dunn, Robert H. Boyle, Dimitri Sevastopoulo, Ian Nitschke And Stand Together Oppose Power Plant, Plaintiffs–Appellants–Cross–Appellees,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, Defendant–Appellee,

Athens Generating Company, L.P., Movant–Cross–Appellant.

Nos. 01–6199, 01–6201.

United States Court of Appeals, Second Circuit.

Docket Oct. 9, 2002.

Kenneth F. McCallion, New York, NY, for Appellants.

Elizabeth S. Riker, Assistant United States Attorney (for Joseph A. Pavone, United States Attorney), United States Attorney's Office for the Northern District of New York, Syracuse, NY, for Appellee.

Ruth E. Leistensnider, Albany, NY, for Proposed Intervenor.

Present CALABRESI, B.D. PARKER, Jr., Circuit Judges and STEIN, District Judge.*

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said District Court be, and it hereby is,

AFFIRMED IN PART AND REMANDED IN PART.

This case arose from the proposed construction of a natural gas-fired electric generating plant owned and operated by proposed intervenor Athens Generating Company ("AGC") in Athens, New York. The plant, which is currently under construction, would cover approximately 25 acres near the Hudson River in Greene County. The site is a greenfield area with mature forest and wetlands and is home to numerous species of plants and animals. The plant would consist of three generation units (each with its own emission stack), a common cooling tower, and an administrative building. Support facilities include an intake-discharge unit and pumping station, located on the Hudson River, which would supply some 180,000 gallons per day of cooling water to the plant. The plant would be powered by natural gas via an underground pipeline, and use the New York State Bulk Transmission System to provide electric power through the New York Independent Systems Operator.

In 1997, AGC applied to New York State for a certificate of environmental compatibility and public need, which, under Article X of the New York Public Service Law, N.Y. Pub. Serv. Law §§ 160 *et seq.*, is a prerequisite to siting a major electric generating facility. The application was submitted to the New York State Board on Electric Generation Siting and the Environment. Lengthy discovery, briefing, and hearings followed, with substantial participation from interested public groups. In June 2000, the Board issued a detailed opinion granting the certificate, subject to several conditions. *See Citizens for Hudson Valley v. N.Y. State Bd. on*

* The Honorable Sidney H. Stein, United States District Court for the Southern District of New York, sitting by designation.

*Elec. Generation Siting and the Env't,* 281 A.D.2d 89, 723 N.Y.S.2d 532, 534–35 (3d Dep't 2001).

Because federal waters also would be impacted by the project, in February 1999 AGC applied for an Army Corps of Engineers ("Corps") permit authorizing (i) the filling of wetlands for construction of an access road to the facility, a portion of a cooling tower, and pole foundations for electric transmission lines, and (ii) the installation of water intake and discharge pipelines extending from the plant into the Hudson River. After more than two years of review during which the Corps consulted with several other federal and state agencies and held multiple public hearings, it issued a permit to AGC in May 2001 along with an environmental assessment ("EA") in which it concluded that the proposed construction would not have a significant impact on the environment (a so-called Finding of No Significant Impact ("FONSI")). Like the state permit, the Corps permit was subject to numerous special conditions, including mitigation requirements, periodic reports on environmental conditions, and monitoring by the Corps.

Plaintiffs, concerned citizens and property owners in Athens, sued under the National Environmental Policy Act ("NEPA") of 1969, ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* and the National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470 *et seq.,* to enjoin the permit on the ground that an environmental impact statement ("EIS") should have been prepared. The District Court denied their motion for a preliminary injunction, *Pogliani v. United States Army Corps of Eng'rs,* 166 F.Supp.2d 673 (N.D.N.Y.2001), and plaintiffs appealed. AGC, which moved for and was provisionally granted permission to intervene on plaintiffs' appeal, also appeals from the denial of its own intervention motion by the court below.

## I. Plaintiffs' Appeal

■■■ We review the denial of a preliminary injunction motion for abuse of discretion. *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 171 (2d Cir.2001). Contrary to plaintiffs' contention, the fact that the District Court did not hear live testimony on the motion does not require a different standard of review. *Id.* "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Id.* at 169. We find no abuse of discretion here.

"A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002). On the issue of irreparable harm, which plaintiffs must demonstrate on a motion for a preliminary injunction, we believe that plaintiffs have not shown that any harm would imminently occur absent an injunction. Indeed, given the extent of the construction already undertaken, the principal relief available to plaintiffs would be further environmental mitigation, which could take place just as effectively in the future, should plaintiffs ultimately prevail. Accordingly, we need not consider the merits of plaintiffs' claims.[1] Because we affirm the District

---

**1.** In a separate *per curiam* opinion, we ad-    dress plaintiffs' argument that the Corps

Court's denial of plaintiffs' motion for a preliminary injunction, AGC's motion to intervene on plaintiffs' appeal is dismissed as moot.[2]

## II. AGC's Cross–Appeal

■ In the court below, AGC moved to intervene as of right under Fed.R.Civ.P. 24(a)(2).[3] The District Court "note[d] the divergent views of the various circuits concerning the issue of intervention by non-governmental parties in NEPA compliance cases," but declined to address the issue. *Pogliani*, 166 F.Supp.2d at 701. The court reasoned that, since it had denied plaintiffs' preliminary injunction motion, any legally protectable interest AGC had in the continuation of its generating project no longer was implicated. *Id.* It nevertheless denied the company's intervention motion without prejudice, stating that it would "entertain anew any application by [AGC] to participate in the remedial phase of this action." *Id.* at 701–02.

"It is settled law that this Court has jurisdiction over an order denying intervention." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 413 (2d Cir. 2001) (citation omitted); *see also Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir.2002) ("[D]ismissals with and without prejudice are equally appealable as final orders."). Reviewing for abuse of discretion, *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2nd Cir.2000), we find that the denial of plaintiffs' preliminary injunction motion need

not strip AGC of any alleged "interest relating to the property or transaction which is the subject of th[is] action." Fed. R.Civ.P. 24(a). We therefore remand to the District Court to consider AGC's intervention motion on the merits, including, of course, the court's views on what legal standard should control. *See, e.g., Wetlands Action Network v. United States Army Corps of Eng'rs*, 222 F.3d 1105 (9th Cir.2000); *Kleissler v. United States Forest Serv.*, 157 F.3d 964 (3d Cir.1998); *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994); *Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir.1982); *Natural Res. Def. Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341 (10th Cir.1978). Should the court conclude that intervention may be proper, but not warranted at this stage of the proceedings, it should consider whether to allow AGC's reapplication for intervention at a juncture earlier than the "remedial phase," should the company's ability to protect its interests be "impair[ed]" or "imped[ed]." Fed.R.Civ.P. 24(a)(2).

---

erred by failing to provide them a draft EA and FONSI prior to issuing the permit.

2. AGC has also moved to dismiss plaintiffs' appeal as moot, contending that "construction activities within the waters of the United States authorized by the Corps permit have been substantially completed and . . . a stay of the Corps permit would have no effect on the construction or operation of the Athens facili-

ty." We deny this motion as moot since AGC's motion to intervene on this appeal has been denied as moot.

3. AGC also moved in the District Court for permissive intervention under Fed.R.Civ.P. 24(b), which was denied. *Pogliani*, 166 F.Supp.2d at 701. It presents no arguments concerning Rule 24(b) on appeal.