**CAYUGA INDIAN NATION OF NEW YORK, Plaintiff,**

v.

**VILLAGE OF UNION SPRINGS; Town of Springport; and Town of Cayuga New York, Defendants.**

**No. 5:03–CV–1270.**

United States District Court, N.D. New York.

Nov. 28, 2003.

Sonnenschein Nath & Rosenthall LLP (Raymond J. Heslin, Esq., Stephen L. Brodsky, Esq., of Counsel), New York City, for Plaintiff.

Hiscock & Barclay, LLP (Alan R. Peterman, Esq., Judith M. Sayles, Esq., of Counsel), Syracuse, NY, for Defendants.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

The plaintiff, the Cayuga Indian Nation of New York ("the Nation") filed suit against defendants seeking declaratory and injunctive relief regarding the nature of use of property plaintiff owns within defendants' municipal boundaries ("the Property"). The Nation contemporaneously sought an order to show cause why defendants should not be preliminarily enjoined from applying or enforcing their zoning and land use laws against the Nation regarding renovations to the Property and a temporary restraining order ("TRO") pending a hearing on same. The Nation's request for an order to show cause and a TRO was granted, and *sua sponte* a TRO was issued against the Nation, enjoining it from further construction, renovation, or demolition activities on the Property until arguments regarding the preliminary injunction motion. On October 29, 2003, defendants filed an answer with a counterclaim seeking declaratory and injunctive relief against plaintiff, along with a cross motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(1). Defendants Town of Springport ("the Town") and County of Cayuga ("the County") also moved for dismissal of the complaint against them for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Defendant Village of Union Springs ("the Village") also moved for a preliminary injunction enjoining plaintiff from further development of the Property. In its memorandum of law opposing defendants' cross motions, the Nation moved for dismissal of defendants'

counterclaim. The Nation has also requested that sanctions be imposed upon defendants.

Oral argument was heard regarding all of the aforementioned pending motions on November 3, 2003 in Utica, New York. Decision was reserved.

## II. *BACKGROUND*

The Property at issue is located within the 64,015 acres that was the subject of land claim litigation, to which the plaintiff and all defendants in this case were also parties. *See Cayuga Indian Nation of New York v. Pataki, et al.,* 188 F.Supp.2d 223 (N.D.N.Y.2002). In that case, the court held that the 1794 Treaty of Canandaigua conferred treaty-recognized title in the subject land to the Nation.[1] *See Cayuga Indian Nation of New York v. Cuomo, et al.,* 758 F.Supp. 107, 115 (N.D.N.Y. 1991). The court in *Cayuga* held that violations of the Nonintercourse Act occurred, *see* 25 U.S.C. § 177 (2003), and a jury ultimately awarded damages. *See Cayuga Indian Nation of New York v. Cuomo, et al.,* 730 F.Supp. 485 (N.D.N.Y. 1990); *Cayuga Indian Nation of New York v. Pataki, et al.,* 165 F.Supp.2d 266 (N.D.N.Y.2001). At no time, however, was the court ever called upon to decide the issue which is so critical to resolution of the present case, to wit, whether the subject land is "Indian Country" pursuant to 18 U.S.C. § 1151 (2003).

On April 28, 2003, the Nation reacquired the Property located at 271 Cayuga Street in the Village in fee simple by indenture and began renovations. On October 9, 2003, and October 15, 2003, the Village issued to the Nation Stop Work Orders and Orders to Remedy Violations, citing violations of zoning ordinances and local laws. The Orders to Remedy Violations contained language that directed the Nation to remedy the alleged violations and give written notice to the Village in compliance with the applicable provisions of law before October 20, 2003 and October 25, 2003, respectively, or be subject to punishment in the form of a fine and/or imprisonment.

On October 20, 2003, the present action was commenced. Count I of plaintiff's complaint alleges that defendants have violated the 1794 Treaty of Canandaigua, the Indian Commerce Clause, the Nonintercourse Act and federal regulation, and that by challenging the Nation's sovereignty, defendants have thereby placed into controversy whether the Property at issue is "Indian Country" within the meaning of 18 U.S.C. § 1151. *See* Compl. ¶¶ 30–34. Count II alleges that defendants' actions have placed the Nation in danger of "imminent, permanent and irreparable harm for which there is no remedy at law." *See* Compl. ¶¶ 35–38. The Nation seeks a declaration that the Property is Indian Country and an injunction preliminarily and permanently enjoining defendants from applying or enforcing its zoning and land use laws, or any other laws, against it. Thereafter, the pending motions ensued.

Defendants' counterclaim alleges that the Nation has violated local ordinances

---

**1.** The court also held that treaty-recognized title was conferred to the Seneca–Cayuga Tribe of Oklahoma ("the Tribe"), plaintiff-intervenor in that action. In another pending action similar to the one presently before this court, the Tribe is seeking declaratory and injunctive relief against the State of New York, Town of Montezuma, Town of Aurelius, and County of Cayuga regarding their attempts to regulate the Tribe's construction of a bingo hall on land it purchased in fee simple, which is also located within the 64,015–acre land claim area. *See Seneca–Cayuga Tribe of Oklahoma v. Town of Aurelius, et al.,* 03–CV–690 (N.D.N.Y.). The Nation recently intervened in that action as a defendant in order to protect its sovereignty interest in land within the claim area.

and laws requiring permits for all building, restructuring and changes in use on property within Village boundaries. *See* Answer and Countercl. ¶¶ 78–82. Defendants seek a declaration that, among other things, the Property is not Indian Country, and an injunction enjoining the Nation from any construction on the Property without first obtaining the proper permits.

## III. DISCUSSION

### A. 12(b)(1) Motion to Dismiss

In opposing the Nation's motion for a preliminary injunction, defendants move for dismissal of the entire action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Because this motion is dispositive of the entire action, it will be addressed first as a threshold question.

A case may be properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court lacks statutory or constitutional authority to adjudicate it. *See Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir.2002), *citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When deciding whether to grant a 12(b)(1) motion to dismiss, the court "accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *See Lunney v. United States*, 319 F.3d 550, 554 (2d Cir.2003), *citing Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir.1997). The court may also refer to evidence outside the pleadings and the plaintiff carries the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Luckett*, 290 F.3d at 496–497.

■ The Nation contends that there is federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal ques-tion), 1337 (commerce and antitrust regulations), 1343(3) (civil rights), 1362 (Indian tribes), 2201 and 2202 (declaratory judgments). *See* Compl. ¶¶ 6–7. The Nation fails to plead facts necessary to invoke federal jurisdiction pursuant to §§ 1337 or 1343(3). Sections §§ 2201 and 2202 will likewise not be considered because those statutes do not confer jurisdiction on a federal court, but instead establish declaratory judgment as an available remedy. *See Fleet Bank Nat'l Ass'n v. Burke*, 160 F.3d 883, 886 (2d Cir.1998), *citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

Pursuant to § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331 (2003) (emphasis added). Section 1362 gives federal courts "original jurisdiction of all civil actions, brought by any Indian tribe ... wherein the matter in controversy *arises under* the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1362 (2003) (emphasis added). Although courts have disagreed as to the substantive differences, § 1362 is virtually procedurally identical to § 1331. *See Oneida Indian Nation v. County of Oneida*, 464 F.2d 916, 920 n. 4 (2d Cir.1972), *rev'd on other grounds*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (finding that the sole purpose of § 1362 was to eliminate the matter in controversy requirement, which is no longer in place, under § 1331). *See also Quinault Tribe v. Gallagher*, 368 F.2d 648, 656 (9th Cir.1966), *cert. denied*, 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967); *Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 714 (9th Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981); *Penobscot Nation v. Georgia–Pac. Corp.*, 106 F.Supp.2d 81, 86 (D.Me.2000), *aff'd on oth-*

*er grounds,* 254 F.3d 317 (1st Cir.2001). *But see Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) (finding that the purpose of § 1362 was to give tribes, at least in some respects, access to federal courts that is at least as broad as that of the United States when suing as a tribe's trustee). In any event, for the purpose of deciding the present motion, because §§ 1331 and 1362 each contain the relevant "arising under" language, an analysis of jurisdiction pursuant to § 1331 will be dispositive of jurisdiction pursuant to § 1362.[2]

Whether or not a case is one "arising under" federal law in accordance with § 1331 is governed by the "well-pleaded complaint" rule, which states that a federal claim must appear on the face of the complaint, "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *See Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 842, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989), *quoting Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914); *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Moreover, federal question jurisdiction exists where "a well-pleaded complaint estab-lishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *See Perpetual Sec. v. Tang,* 290 F.3d 132, 137 (2d Cir.2002), *citing Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 25 (2d Cir.2000), (*quoting Franchise Tax Bd. of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983)). An exception to the well-pleaded complaint rule arises when the state cause of action is completely preempted by federal law. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987), *citing Franchise Tax,* 463 U.S. at 24, 103 S.Ct. at 2854. In such a case, the purported state claim converts into one arising under federal law for purposes of the well-pleaded complaint rule. *See id.*

Defendants argue that here, the Nation's claims are merely federal defenses to anticipated state law claims and as such, are contrary to the well-pleaded complaint rule, thereby falling outside the realm of federal question jurisdiction. However, at oral argument, defendants refused to concede that the Property is Indian Country, and admitted that this was an issue that could only be determined in federal court.

**2.** The Nation cites *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) in support of its argument that this court has jurisdiction pursuant to § 1362. Other courts have followed *Moe* for its holding that the Tax Injunction Act, *see* 28 U.S.C. § 1341 (2003), does not bar federal jurisdiction pursuant to § 1362 to hear cases brought by Indian tribes or tribal members seeking to enjoin state taxation of reservation land or activities. *See, e.g., Southern Ute Indian Tribe v. Board of County Comm'rs,* 855 F.Supp. 1194 (D.Colo.1994), *vacated on ripeness grounds,* 61 F.3d 916 (10th Cir.1995); *Tunica–Biloxi Tribe v. Louisiana,* 964 F.2d 1536 (5th Cir.1992). In *Moe,* the Court, citing *United States v. Rickert,* 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1903), found that because the United States is able to sue the state as trustee for the Indians in order to seek injunctive relief from state taxation without violation of § 1341, the tribe could do the same pursuant to § 1362. *See Moe,* 425 U.S. at 473, 96 S.Ct. 1634. However, no court has cited *Moe* in order to accept the proposition set forth by the Nation in this case, namely, that § 1362 confers upon federal courts jurisdiction of a suit by an Indian tribe against a state or municipal government for a declaratory judgment that land is Indian Country and an injunction barring defendants from enforcement of state or local laws against plaintiff tribe. Ultimately, this argument need not be addressed since § 1331 confers jurisdiction of the present action.

The Nation contends that defendants' motion should be rejected because its complaint does not merely set forth a federal defense to an anticipated state cause of action, but instead requests declaratory relief regarding defendants' violation of federal law, namely, the Treaty of Canandaigua, the Indian Commerce Clause, the Nonintercourse Act, and federal common law.[3] The Nation argues that it seeks affirmative relief in the form of a ruling that the Property is Indian Country and not merely a declaration that it has a successful defense to a state claim. Quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 676, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the Nation contends that an Indian tribe's right to govern itself on its own land "is claimed to arise under federal law in the first instance," although there the Court was actually referring to the Oneida Nation's right to possession of lands conferred to it by treaty. The Nation does correctly set forth several cases wherein Indian tribes have contested, in federal court, state regulation of reservation lands or on-reservation activities without a finding that subject matter jurisdiction is lacking. *See, e.g., California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 206, 107 S.Ct. 1083, 1086, 94 L.Ed.2d 244 (1987) (Indian tribes sued state in federal court for declaratory judgment that county had no authority to enforce its ordinances within reservation land and an injunction preventing such enforcement); *Gobin v. Snohomish County,* 304 F.3d 909, (9th Cir.2002) (Indian tribe and tribal member sued county in federal court seeking declaration that county lacked jurisdiction to impose its zoning and land use regulations upon on-reservation tribal activity).

In support of their argument that the Nation's claims are in fact federal defenses to a state law claim and should therefore be dismissed pursuant to Rule 12(b)(1), defendants principally rely on *Penobscot Nation v. Georgia–Pacific Corp.,* wherein the court dismissed a suit for declaratory and injunctive relief filed by two Indian tribes against three paper companies for lack of subject matter jurisdiction. *See* 106 F.Supp.2d 81 (D.Me.2000), *aff'd on other grounds,* 254 F.3d 317 (1st Cir.2001). In that case, as here, the tribes sought an injunction and a declaratory judgment that enforcement of state law against the tribes violated their federal right to be free from state regulation. *See* 106 F.Supp.2d at 82. The tribes, as does the Nation here, based subject matter jurisdiction on §§ 1331 and 1362. *See id.* The court in *Penobscot* held that a claim for declaratory relief which seeks a declaration that a federal defense trumps a claim for relief under state law is not a civil action "arising under" federal law pursuant to 28 U.S.C. § 1331 or § 1362. *See id.* at 82–83, *citing Skelly Oil,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194; *Franchise Tax,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420; *Public Service Comm'n v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). However, as the Nation argues, in *Penobscot,* unlike here, the tribe

---

**3.** At the hearing regarding these motions, counsel for the Nation began his argument in opposition to defendants' 12(b)(1) motion by intimating that defendants consented to jurisdiction when they sought to assert a counterclaim against the Nation based on identical facts, citing federal question jurisdiction. It is true that defendants predicate their counterclaim on supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (2003) and also on the Declaratory Judgment Act, 28 U.S.C. § 2201 (2003). *See* Answer and Countercl. ¶ 59. *See also supra* at 3 (finding § 2201 establishes a remedy, but does not confer jurisdiction). However, a challenge to subject matter jurisdiction cannot be waived, and a party or a court, *sua sponte,* may raise the issue at any time. *See Transatlantic Marine Claims Agency, Inc., v. Ace Shipping Corp.,* 109 F.3d 105, 107–108 (2d Cir.1997).

could not assert its right to be free from state regulation because its rights were governed entirely by the Maine Claims Settlement Act, *see* 25 U.S.C. § 1721 et seq (2003). In fact, the tribe in *Penobscot* was "subject to extensive state regulation agreed to by Congress." *See* 254 F.3d at 322. Here, unlike in *Penobscot,* neither the Nation nor the federal government has expressly agreed that the Nation is subject to state or local zoning regulations. Therefore, the issue of whether the Property is Indian Country, which is a substantial question of federal law, must be resolved in order to give either party the relief requested. For this reason, *Penobscot* is clearly not controlling here.

A similar case, *Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.,* referred to at oral argument, merits some discussion. *See* 223 F.Supp.2d 346 (D.Mass.2002), *after remand from federal court,* No. 200100027, 2003 WL 22133168 (Mass.Super. June 13, 2003). In *Wiener,* a town building inspector filed suit in state court against a tribal council and its corporation, seeking enforcement of local zoning laws. *See* 2003 WL 22133168, at *5. The defendants thereafter removed the case to federal court, where, during a summary judgment hearing, the court *sua sponte* raised the issue of subject matter jurisdiction, and ultimately remanded the case to state court on that ground. *See* 223 F.Supp.2d at 348. Upon remand, the state court dismissed the case on a summary judgment motion because it found that the Tribal defendants, having not consented to suit in state court, enjoyed sovereign immunity from same. *See* 2003 WL 22133168, at *10. Defendants here presumably contend that the *Wiener* holding in federal court supports its argument that this court lacks subject matter jurisdiction and the Nation contends the state holding supports its argument that defendants here lack the authority to enforce their local laws against the Nation. While the latter argument will be addressed later in this decision regarding the pending motion and cross motion for preliminary injunction, *see infra* at 12–13, both parties contentions are dubious. As in *Penobscot,* the tribe in *Wiener* executed an agreement with the state, later effectuated by state and federal enactment, wherein the tribe consented to be subject to state and local regulation. *See* 223 F.Supp.2d at 348. No such federal or Nation consent exists here. Therefore, *Wiener* likewise does not support defendants' motion.

Defendants also rely upon *Fleet Bank Nat'l Ass'n v. Burke,* 160 F.3d 883 (2d Cir.1998), wherein the Court of Appeals held that subject matter jurisdiction was lacking because the plaintiff sought a declaration that federal law pre-empted a ruling made by a state banking commissioner, thereby seeking federal jurisdiction over a federally derived defense to a state law action. *See* 160 F.3d at 886–887. In *Fleet,* the plaintiff, a national banking association, filed suit against the Connecticut Commissioner of Banking, seeking a declaration that the state's Automatic Teller Machine ("ATM") statutes did not prohibit surcharge fees and that the National Bank Act, *see* 12 U.S.C. §§ 21–216d (2003), preempted said state statutes insofar as they were interpreted to prohibit surcharge fees, and seeking an injunction enjoining the defendant from interfering with plaintiff's imposition of said fees. *See id.* at 885. The Nation distinguishes *Fleet* because there, unlike here, jurisdiction was lacking as the plaintiff sought declaratory relief under a state law. Notably, the plaintiff in *Fleet* also sought to base subject matter jurisdiction on the complete preemption exception to the well-pleaded complaint rule. *See id.* at 886–887. The court there examined the distinction "between preemption claims asserted in com-

plaints seeking only a declaratory judgment, for which *Caterpillar* and *Wycoff* indicate that federal court jurisdiction would be lacking under the well-pleaded complaint rule, and preemption claims asserted in complaints seeking an injunction." *See id.* at 888. In the latter type of case, such as in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where plaintiff sought declaratory and injunctive relief to prevent enforcement of a state human rights law on the ground that it was preempted by the Employees Retirement Income Security Act ("ERISA"), subject matter jurisdiction may be found to exist. The *Fleet* Court noted that in *Shaw* the Supreme Court upheld subject matter jurisdiction on the ground that "federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights," *citing Ex Parte Young*, 209 U.S. 123, 160–162, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and therefore, "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *See Fleet*, 160 F.3d at 888, *citing Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. 2890.

Also, the *Fleet* Court noted that in *Franchise Tax*, decided the same day as *Shaw*, the Supreme Court, while holding that a suit for declaratory relief by a state in order to collect taxes on a "welfare benefit trust" within the meaning of ERISA did not "arise under" ERISA and therefore was not removable to federal court, commented in a footnote that the defendant there "might have been able to obtain federal jurisdiction under the doctrine ... that a person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of con-

flicting state regulations, and a declaratory judgment action by the same person does not run afoul of the *Skelly Oil* doctrine." *See Fleet*, 160 F.3d at 888, *citing Franchise Tax*, 463 U.S. at 20 n. 20, 103 S.Ct. 2841. While gleaning from *Shaw* and *Franchise Tax* that jurisdiction seems to exist when, as in *Fleet*, the same person seeks declaratory and injunctive relief, the *Fleet* Court distinguished *Shaw* in that there, unlike in *Fleet*, no issue was raised as to the interpretation of state law. *See* 160 F.3d at 889. The *Fleet* Court found that the issue it faced was "whether a plaintiff that disputes a state official's interpretation of state law can invoke federal question jurisdiction to seek a favorable construction of state law and, if successful in that effort, an injunction barring enforcement of the state law on the ground of preemption." *See id.* This is clearly not the case here. In this case a determination must be made on a *federal* issue, to wit, whether the Property is Indian Country pursuant to 18 U.S.C. § 1151, whereas in *Fleet*, the question was whether a state law prohibited plaintiff from charging an ATM surcharge fee. This case is more akin to *Shaw* where, in addition to the requested declaratory relief, the Nation is asking to enjoin municipal government regulation of activities governed by and protected pursuant to federal law. For these reasons, defendants' argument that *Fleet* is controlling is rejected.

Finally, defendants note that to the extent the Nation may argue that federal Indian law completely preempts the field in order to come within the exception to the well-pleaded complaint rule, Senior District Judge Neal P. McCurn recently rejected that argument in *Town of Aurelius v. Seneca–Cayuga Tribe of Oklahoma*, 03–CV–987 (N.D.N.Y. Aug. 25, 2003). *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425, *citing Franchise Tax*, 463 U.S. at 24,

103 S.Ct. 2841. A brief discussion of the factual and procedural background of that case is in order. Initially, it should be noted that the Seneca–Cayuga Tribe of Oklahoma ("the Tribe") was a plaintiff-intervenor in *Cayuga Indian Nation of New York v. Pataki, et al.*, the same litigation regarding the land claim area wherein the Property at issue in the present case is located. *See* 188 F.Supp.2d 223 (N.D.N.Y. 2002). The Tribe, as did the Nation here, purchased land in fee simple within the land claim area and began development of that land without obtaining state or local permits. In June 2003, after the local governments threatened issuance of a Stop Work Order to prevent further development of the land by the Tribe without permits, the Tribe filed suit in federal court against the Town of Aurelius, Town of Montezuma, and County of Cayuga alleging violations of the Treaty of Canandaigua, the Indian Commerce Clause, the Nonintercourse Act, federal common law and federal regulation and seeking a declaration that the land is Indian Country and a preliminary and permanent injunction preventing defendants from enforcement of zoning or land use regulations, or any other laws, and from imposition of any taxes. *See Seneca–Cayuga Tribe of Oklahoma v. Town of Aurelius, et al.*, 03–CV–690 (N.D.N.Y.). On August 1, 2003, after issuance of a Stop Work Order by the Town of Aurelius, the Tribe filed a motion for a TRO pending a hearing on its motion for a preliminary injunction, and on that same day its request for a TRO was denied. When the Tribe continued construction in violation of the Stop Work Order, the Town of Aurelius filed suit against the Tribe in state court citing violations of local zoning ordinances and seeking a declaration that the Tribe was in violation of said ordinances and an order enjoining them from further development of the land

without a permit. The Tribe then removed the action to federal court.

Judge McCurn, upon motion by the Town of Aurelius, ordered the case remanded to state court because the complaint therein did not state a federal cause of action on its face, and because, relying on *Caterpillar* and *Graham,* the federal defenses alleged by the Tribe were not enough to bring the action within the terms of 28 U.S.C. § 1331. *See* 03–CV–987, citing *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425; *Graham,* 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924. However in *Town of Aurelius,* as in *Fleet,* the court was asked on the face of the complaint to deal with issues of state law, unlike here where the causes of action are federal in nature. Moreover, as the Nation notes, Judge McCurn did *not* dismiss the action originally brought in federal court where the Tribe set forth claims and demands for relief almost identical to the ones presented here.

■ It should also be noted that defendants, in response to this court's inquiry at the hearing on these motions regarding how they would distinguish *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139 (2d Cir.2003), argue that subject matter jurisdiction was never challenged in that case, either in this court or before the Second Circuit Court of Appeals. Defendants likewise mentioned that jurisdiction has never been challenged before Judge McCurn in the Seneca–Cayuga case. However, challenges to subject matter jurisdiction may be raised at any time, not only by a party to an action, but also by the court, on its own motion. *See Transatlantic Marine Claims Agency, Inc., v. Ace Shipping Corp.,* 109 F.3d 105, 107–108 (2d Cir.1997). It is significant that other claims brought in federal court, similar to those presented here, have not been dismissed for lack of subject matter

jurisdiction. *See, e.g., Cabazon,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244; *City of Sherrill,* 337 F.3d 139; *John v. City of Salamanca,* 845 F.2d 37 (2d Cir.1988); *Gobin,* 304 F.3d 909; *New York v. Shinnecock Indian Nation,* 280 F.Supp.2d 1 (E.D.N.Y.2003); *Seneca–Cayuga,* No. 03–CV–690 (N.D.N.Y.).

For the foregoing reasons, defendants' 12(b)(1) motion to dismiss must be denied.

### B. *12(b)(6) Motion to Dismiss*

Additionally, defendants Town and County seek dismissal of the Nation's claims against them for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Levitt v. Bear Stearns & Co.,* 340 F.3d 94, 101, (2d Cir.2003), *citing Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998), *(quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When reviewing a 12(b)(6) motion, this court must accept the allegations of fact in plaintiff's complaint as true, drawing all reasonable inferences in its favor. *See id.; Kavowras v. New York Times Co.,* 328 F.3d 50, 54 (2d Cir.2003).

Defendants Town and County argue that nowhere in the Nation's complaint or moving papers are there any substantive allegations of wrongdoing against them, and as such, the complaint fails to state a cause of action. Said defendants further contend that the Nation's allegation that the Cayuga County Sheriff served the Stop Work Orders and Orders to Remedy Violations upon Nation representatives does not state a claim against the County because the Sheriff's Department is a separate legal entity from the County, and absent legislation to the contrary, a county may not be held liable for the allegations of a Sheriff's Department. *See Santiamagro v. County of Orange,* 226 A.D.2d 359, 640 N.Y.S.2d 251 (2d Dep't 1996) (finding New York State Constitution amendment allows a county to accept responsibility for the actions of its sheriff, but does not impose liability upon county for same); *Marashian v. City of Utica,* 214 A.D.2d 1034, 626 N.Y.S.2d 646 (4th Dep't 1995) (finding that in the absence of county legislation assuming responsibility for actions of sheriff based on theory of respondeat superior, a county may not be held responsible for the actions of its sheriff). Said defendants argue that since the County has adopted no such legislation, the Nation's claims against them must be dismissed.

 The Property is located within the boundaries of the Town and County, as well as the Village, and as such, a declaratory judgment that the Property is Indian Country will affect all three named defendants. Plaintiff's complaint alleges that the Property is located "within the Village of Union Springs, Town of Springport" and also within the Nation's "[t]reaty-recognized and federally protected lands." *See* Compl. ¶¶ 1–2. Plaintiff also sets forth allegations sufficient to make out a claim for violations of federal law against the Village and to establish that a case or controversy exists between all of the parties. *See id.* ¶¶ 20–34. Finally, while the complaint does not expressly state that the Property lies within the County, resolving all inferences in plaintiff's favor, as must be done when deciding a 12(b)(6) motion to dismiss, sufficient facts have been alleged to identify all three named defendants as proper parties. The 12(b)(6) motion of the Town and County must be denied.

### C. Motions to Dismiss on Tribal Sovereign Immunity

In its opposition papers, the Nation moves to dismiss the Village's motion for a preliminary injunction[4] as well as defendants' counterclaim based on tribal sovereign immunity grounds. It is generally true, as the Nation argues, that "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity," see Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998), and that there is "no automatic waiver of immunity as to counterclaims" where an Indian tribe initiates a lawsuit, see Oneida Indian Nation of New York v. New York, 194 F.Supp.2d 104, 136 (N.D.N.Y.2002). However, "it is well established that when the United States or an Indian tribe initiates a lawsuit, a defendant may assert counterclaims that sound in recoupment even absent a statutory waiver of immunity." See, Oneida, 194 F.Supp.2d at 136 citing United States v. Forma, 42 F.3d 759, 764 (2d Cir.1994); United States v. Tsosie, 92 F.3d 1037, 1043 (10th Cir.1996); Rosebud Sioux Tribe v. Val–U Constr. Co. of South Dakota, Inc., 50 F.3d 560, 562–63 (8th Cir.1995); Livera v. First Nat'l State Bank of New Jersey, 879 F.2d 1186, 1195–96 (3d Cir. 1989).

Recently, Judge McCurn, in Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York, 278 F.Supp.2d 313 (N.D.N.Y.2003), followed District Judge Lawrence E. Kahn's reasoning in Oneida to deny the tribe's motion to dismiss defendants' recoupment counterclaims, but only to the extent they did not seek affirmative relief, noting that "as long as Defendants' counterclaim does not 'venture outside the subject of the original cause of action,' the ... tribal Plaintiffs can be considered to have waived their immunity to such a counterclaim." See St. Regis, 278 F.Supp.2d at 359, citing Oneida, 194 F.Supp.2d at 136. To be sure, as both courts noted, recoupment is defined as "a method by which a defendant may reduce the amount of damages it is liable to pay." See St. Regis, 278 F.Supp.2d at 354, citing Oneida, 194 F.Supp.2d at 145. However, in Oneida, Judge Kahn, in declining to grant sovereign immunity as to defendant's counterclaim, which sought a declaratory judgment that plaintiff had no rights to the subject lands due to disestablishment, found the Tenth Circuit Court of Appeals' holding in Tsosie to be instructive. See Oneida, 194 F.Supp.2d at 136–137. Tsosie involved an action in ejectment and trespass filed by the United States on behalf of a tribal member against a defendant who filed a counterclaim seeking a declaratory judgment that she had an aboriginal interest in the subject land. See id.,citing Tsosie, 92 F.3d at 1039. The court there concluded that plaintiff's sovereign immunity had been waived because the counterclaim was "based on issues asserted by [plaintiff] in its complaint." See id.,citing Tsosie at 1043. It appears, then, that as applied, claims in recoupment are not limited to claims for monetary damages, and a claim for declaratory relief may, in fact, be deemed a claim for recoupment as long as it arises out of the same subject as the original cause of action and is based on issues asserted in the complaint.

The Nation is correct that in City of Sherrill, counterclaims were dismissed against the Oneida Indian Nation based on

---

4. The Village is the sole defendant filing a cross motion for preliminary injunction against the Nation, apparently because defendants Town and County argue that the complaint should be dismissed as against them pursuant to Fed.R.Civ.P. 12(b)(6).

tribal sovereign immunity. *See Oneida Indian Nation of New York v. City of Sherrill,* 145 F.Supp.2d 226, 258–259 (N.D.N.Y.2001), *aff'd in part and rev'd in part on other grounds,* 337 F.3d 139 (2d Cir.2003). Defendants correctly note that in *City of Sherrill,* the counterclaims sought, among other things, monetary damages and ejectment. *See id.* at 237–238. More importantly, though, the counterclaims in *City of Sherrill,* were clearly not based in recoupment, as they far exceeded the nature and scope of what was demanded by the Oneida Nation. *See id.* at 237–238.

■ Here, defendants seek declaratory and injunctive relief which mirrors that requested by the Nation in its case in chief. Moreover, unlike *City of Sherrill,* the relief requested by defendants is limited in nature and in scope to the exact relief requested by the Nation. Therefore, the Nation's motion to dismiss defendants' counterclaim and cross-motion for preliminary injunction on tribal sovereign immunity grounds must be denied.

## D. *Preliminary Injunction Motions*

The Nation moves for preliminary injunctive relief, enjoining defendants from further interference with their sovereign right to govern activities on the Property. The Village cross moves for a preliminary injunction enjoining the Nation from any further development or renovation to the Property without first obtaining a permit.

■ Generally, in order to obtain a preliminary injunction, a party "must establish that it will suffer irreparable harm in the absence of an injunction *and* demonstrate either (1) 'a likelihood of success on the merits' *or* (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly' in the movant's favor." *See Jolly v. Coughlin,* 76

F.3d 468, 473 (2d Cir.1996)(emphasis added). *See also Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 108 (2d Cir.2003). However, when a party, such as the Nation, challenges "government action taken in the public interest pursuant to a statutory or regulatory scheme," it must establish irreparable harm and a likelihood of success on the merits—the lesser 'fair ground for litigation' standard will not suffice. *See Fair Housing in Huntington Comm. v. Town of Huntington,* 316 F.3d 357, 365 (2d Cir.2003). The Village is able to prevail on its motion if it meets the lesser standard.

### 1. *Irreparable Harm*

■ Irrespective of which standard apples, a party *must* establish irreparable harm in order to prevail on its motion. "[I]rreparable harm is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.' " *See Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002). In order to make an adequate showing of irreparable harm, the moving party must establish that injury is likely, which is to say harm is "actual and imminent, not remote or speculative." *See id.* Moreover, for an injury to be deemed irreparable, "it must be the kind of injury for which an award of money cannot compensate," *see Sperry Int'l Trade, Inc. v. Government of Israel,* 670 F.2d 8, 12 (2d Cir.1982), and for which adequate redress cannot be reached by a trial on the merits, *see Kamerling,* 295 F.3d at 214.

### a. *Plaintiff's Motion for a Preliminary Injunction*

■ The Nation argues that it need only set forth an allegation of a constitutional deprivation in order to establish irreparable harm per se. *See Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir.1996);

*Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984). In its complaint, the Nation alleged that defendants' attempts to enforce local zoning and land use laws against it on the subject Property constitute an infringement of its sovereignty in violation of the Indian Commerce Clause, Treaty Clause, the Nonintercourse Act, the Treaty of Canandaigua, and federal common law. *See* Compl. ¶ 32. Therefore, the Nation concludes, it meets the required showing of irreparable harm in order to obtain a preliminary injunction.

However, the constitutional rights referred to in the cases the Nation cites are personal rights, such as those protected by, for example, the First and Eighth Amendments. *See Jolly,* 76 F.3d at 482 (irreparable harm found where plaintiff alleged First and Eighth Amendment violations regarding his confinement in medical keeplock for refusing to submit to medical testing due to his religious beliefs); *Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir.1991) (irreparable harm found where plaintiff alleged First Amendment violations due to prohibition of leafletting and dissemination of religious views); *Mitchell,* 748 F.2d at 806 (irreparable harm found where plaintiff alleged an Eighth Amendment violation due to prison overcrowding); *Erie Blvd. Triangle Corp. v. City of Schenectady,* 152 F.Supp.2d 241, 246 (N.D.N.Y.2001), and *North Street Book Shoppe, Inc. v. Village of Endicott,* 582 F.Supp. 1428, 1432 (N.D.N.Y.1984) (irreparable harm found where plaintiff alleged First Amendment violations due to enforcement of local ordinance restricting location of adult bookstores); *Cousins v. Terry,* 721 F.Supp. 426, 432 (N.D.N.Y. 1989) (irreparable harm found where plaintiff alleged § 1983 violations regarding

blockade at entrance of abortion clinic); *Albro v. County of Onondaga,* 627 F.Supp. 1280, 1287 (N.D.N.Y.1986) (irreparable harm found where plaintiff alleged due process violations regarding overcrowding at county jail). Moreover, courts have found per se irreparable harm where the moving party alleges a constitutional deprivation for which monetary compensation is not an adequate remedy. *See Cunningham v. Adams,* 808 F.2d 815, 822 (11th Cir.1987) (even where a plaintiff alleged civil rights violations in the form of race and sex discrimination surrounding the denial of his bid for operation of a concession stand in a municipal airport, the irreparable harm standard was not met because his ultimate injury was lost profits, which could be reimbursed by an award of money damages.)

The Nation distinguishes cases where, although the violation of a constitutional right is alleged, courts have found no irreparable harm because monetary damages were deemed to be a sufficient remedy, because in those cases, unlike here, according to the Nation, the alleged violations were proprietary, not personal, in nature. *See Hohe v. Casey,* 868 F.2d 69 (3d Cir.1989), *cert denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989); *Flower Cab Co. v. Petitte,* 685 F.2d 192, 195 (7th Cir.1982); *ACS Enterprises, Inc. v. Comcast Cablevision of Philadelphia, L.P.,* 857 F.Supp. 1105 (E.D.Pa.1994). The Nation contends that infringement of their tribal sovereignty rises to the level of personal constitutional violations that cannot be remedied by monetary damages, such as the infringement of free speech rights or infliction of cruel and unusual punishment.[5] *See Prairie Band of Pota-*

---

**5.** In their opposition papers, defendants argue that Judge McCurn "apparently rejected" this argument in *Seneca Cayuga Tribe of Okla-*

*homa v. Town of Aurelius.* See 03–CV–690 (N.D.N.Y.). A review of the transcript from oral argument regarding that issue reveals

*watomi Indians v. Pierce,* 253 F.3d 1234, 1251 (10th Cir.2001) (holding that infringement of tribal sovereignty constitutes irreparable injury because "it [can] not be adequately compensated for in the form of monetary damages."); *Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1171–1172 (10th Cir.1998) (finding irreparable harm where defendant corporation sought to seize plaintiff, tribe's assets and prohibit enforcement of tribe's laws); *Winnebago Tribe of Nebraska v. Stovall,* 216 F.Supp.2d 1226, 1233 (D.Kan. 2002) (finding irreparable injury where "scope or tribal sovereignty" is threatened because such "can not be measured in dollars"); *United States v. State of Michigan,* 534 F.Supp. 668 (W.D.Mich.1982) (denial of tribe's treaty protested fishing rights absent biological justification meets irreparable harm standard).

However, in each of the cases cited by the Nation, the infringement of tribal sovereignty was either much larger in scope than that which is at issue here, or was accompanied by other harm which could not be valued in dollars. For example, in *Hoover,* unlike here, the deprivation at issue involved seizure of a variety of tribal assets as well as the impounding of tribal tax proceeds. *See* 150 F.3d at 1171. The deprivation in *Stovall* was even more extensive than *Hoover,* in that the seizure of assets there effectively crippled the tribe's ability to conduct business or provide fire, police, health care or educational services to its members. *See* 216 F.Supp.2d at 1232. In *Michigan,* the court found it instructive that the issuance of a preliminary injunction enforcing protection of treaty-recognized fishing rights would not cause harm to others and therefore did not address the extent of potential harm to the tribe. *See* 534 F.Supp. at 669. Finally, in *Pierce* the state was attempting to enforce its motor vehicle registration laws upon an Indian tribe who previously instituted its own motor vehicle code. *See* 253 F.3d at 1250. There the court found that "the Tribe instituted its motor vehicle code not out of whim but because of a need to control the access and presence of persons to and on the Reservation territory, a result of an increasing number of motor vehicles ... being used by Indian and non-Indian persons to enter the Reservation territory in order to engage in gaming and other activities with Tribal enterprises or members." *See id.* (internal citations and quotation marks omitted). Moreover, in *Pierce* the court went on to note that "[n]ot only is harm to tribal self-government not easily subject to valuation but also, and perhaps more important, monetary relief might not be available to the tribe because of the state's sovereign immunity." *See id.* at 1251. It is quite significant that during a hearing on these motions, counsel for defendants submitted that defendants would not claim immunity to defend against any future action by the Nation to recover monetary damages for losses related to defendants' interference with the Nation's activities on the Property.

Even assuming arguendo that the Property is Indian Country and that the Nation therefore enjoys sovereignty rights in relation thereto, a finding that has not yet been made and need not be made at this time, the Nation has failed to demonstrate that it will suffer irreparable injury absent

that Judge McCurn merely questioned counsel for the Tribe on this point and did not hold, nor has he since held, that the Tribe failed to meet the irreparable harm standard. The parties in that case have agreed to an extended TRO in order to maintain the status quo pending discovery. Therefore, no decision has been rendered as to the Tribe's motion for a preliminary injunction in that case.

a preliminary injunction.[6] The nature and scope of infringement at issue here are not of the level required for a finding of irreparable injury. This conclusion is bolstered by the fact that monetary relief is a remedy available to the Nation since defendants have agreed on the record that they would not enjoy sovereign immunity from a suit by the Nation.

The Nation has failed to establish that it will suffer irreparable harm in the absence of a preliminary injunction. Such a showing is required in order for a preliminary injunction to be issued. Therefore, whether or not the Nation has a likelihood of success on the merits of its claims against defendants, need not be addressed.

### b. *Defendant, Village's Motion for a Preliminary Injunction*

 The Village argues that it will suffer irreparable harm absent a preliminary injunction because the nature of the threatened injuries are such that cannot be compensated monetarily. Even upon a final resolution of the present action in its favor, the Village argues, it cannot be returned to the position it occupied prior to the Nation's commencement of renovations to the Property. *See Brenntag Int'l Chem., Inc. v. Bank of India,* 175 F.3d 245, 249–250 (2d Cir.1999); *Algonquin Power Corp., Inc. v. Trafalgar Power, Inc.,* No. 00–CV–1246, 2000 WL 33963085 at *18 (N.D.N.Y. Nov. 8, 2000). The bulk of these claimed injuries relate to potential harm to the health and safety of its citizens due to the Nation's failure to comply with local building and zoning codes. Specifically, the Village is concerned with structural integrity and fire safety of a

building that its citizens will likely patronize. The Village also argues that there is a strong possibility that some type of gaming operation could commence on the property. According to the Village, in addition to the aforementioned health and safety concerns, gaming will cause significant burdens to its citizens in the form of automobile accidents due to excess traffic, as well as excess drain on the Village's water supply and sewage system. *See id.* at ¶ 21.

The Village's arguments are not persuasive. The Nation has enacted the International Building Code, which, as the Village fails to dispute, meets or exceeds the standards of the Village's own building code. *See* Decl. of Gerald Jimerson, Jr., October 30, 2003, ¶¶ 2–4. Moreover, the speculative nature of the Village's argument regarding the hazards associated with construction of a gaming facility on the Property does not inspire confidence. In any event, the Village has not established that it can not be returned to the position it occupied prior to the commencement of construction or renovation activity on the Property. The cases it cites for this proposition deal with scenarios where the party responsible for causing the injury will be, or is presently, insolvent. *See Brenntag,* 175 F.3d at 250; *Algonquin,* 2000 WL 33963085 at *18. The Village fails to allege that such is the case here, nor is there any evidence to that effect. Therefore, because the Village has not demonstrated that it will suffer irreparable harm absent a preliminary injunction, its motion for a preliminary injunction against the Nation must be de-

---

**6.** In the Nation's letter, dated November 6, 2003, defendants' reply thereto, dated November 17, 2003, and the Nation's surreply dated November 18, 2003, the parties discuss whether, and to what extent, the written comments of the Bureau of Indian Affairs' East-

ern Region Director, dated November 4, 2003, are controlling. Said comments, which may be relevant to a determination of whether the Property is Indian Country, are not relevant to the present issues and therefore will not be addressed at this time.

nied. Again, the arguments regarding whether there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in its favor need not be addressed.

### E. Sanctions

 The remaining issue is whether to grant plaintiff's request to impose sanctions for what plaintiff calls defendants' "flagrant violation of federal law." As defendants correctly argue, plaintiff's request is without merit, and as such, will receive only limited attention. According to 28 U.S.C. § 1927,

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

See 28 U.S.C. § 1927 (2003). "An award of attorneys fees and costs pursuant to § 1927 is appropriate only where the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." See Abbott v. United States, No. 96–CV–510, 2001 WL 670636, *1 (N.D.N.Y. Apr. 30, 2001) (citation and internal quotations omitted). There is nothing to indicate that defendants' actions were taken for an improper purpose. Therefore, the Nation's request for sanctions must be denied.

### IV. CONCLUSION

Therefore, it is

ORDERED that

1. Defendants' motion for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(1) is DENIED;

2. Defendants, Town of Springport and County of Cayuga's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED;

3. Plaintiff's motion to dismiss defendants' counterclaim based on tribal sovereign immunity is DENIED;

4. Plaintiff's motion to dismiss defendant, Village of Union Springs' motion for a preliminary injunction based on tribal sovereign immunity is DENIED;

5. Plaintiff's motion for a preliminary injunction is DENIED;

6. Defendant, Village of Union Springs' motion for a preliminary injunction is DENIED; and

7. Plaintiff's request that sanctions be imposed against defendants is DENIED.

IT IS SO ORDERED.